Filed 9/19/17; Certified for Publication 9/25/17 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GERARDO MEDINA, Plaintiff and Respondent, v. SOUTH COAST CAR COMPANY, INC. et al., Defendants and Appellants. | D069820 (Super. Ct. No. 37-2013-00069866-CU-FR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Richard E.L. Strauss, Judge.  Affirmed.

Madison Harbor and Jenos Firouznam-Heidari for Defendants and Appellants.

Rosner, Barry & Babbitt, Christopher P. Barry, Hallen D. Rosner and Shay Dinata-Hanson, for Plaintiff and Respondent.

In June 2013, plaintiff and respondent Gerardo Medina (plaintiff or Medina) purchased a used 2008 Audi A4 automobile (2008 vehicle) from defendant and appellant South Coast Car Company, Inc. (SCCC).  Defendant and appellant Veros Credit, LLC (Veros) subsequently accepted an assignment of Medina's retail installment sales contract

(RISC) (SCCC and Veros are sometimes collectively referred to as defendants). Medina in his operative complaint alleged nine causes of action against defendants and others based primarily on his contention that SCCC engaged in wrongdoing in connection with the sale of the 2008 vehicle (hereinafter, underlying action), including under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq., CLRA.).

The parties settled the underlying action on the eve of trial and subsequently entered into the Settlement and Mutual Release Agreement (Settlement). Under the Settlement, Medina agreed to dismiss his action with prejudice. SCCC, in return, agreed to pay Medina about $8,600.

Particularly relevant to this appeal, defendants also agreed that they would not "dispute [Medina's] underlying entitlement to attorneys' fees based upon the claims brought in the [underlying a]ction"; that Medina "shall be deemed the prevailing party on all causes of action for purposes of the motion" for attorney fees; that defendants "reserve the right to dispute the reasonableness of the attorneys' fees, costs, and prejudgment interest claimed to have been incurred" by Medina; and that defendants "maintain all defenses as to the limitations on the amount of attorneys' fees, costs, and prejudgment interest."

On appeal (and despite the Settlement), defendants contend the court erred when it awarded Medina attorney fees, costs and prejudgment interest. Specifically, defendants contend that, although Medina was the prevailing party as provided under the Settlement, Veros was not liable to pay any portion of his fees and costs as it was merely the "holder" of the RISC and thus, its liability was limited to the amounts paid by Medina, or about

2

$8,600, and that Medina, in any event, was not entitled to any such award because he previously had rejected SCCC's offer to rescind the RISC.

As we explain, we disagree with defendants' contentions and affirm the order granting Medina attorney fees, costs and prejudgment interest.

BACKGROUND

At all times relevant, SCCC operated a used car dealership located in Escondido, California. In June 2013, Medina was in the market to purchase a car. Medina in the past had purchased other cars from SCCC. Before purchasing the 2008 vehicle, Medina reviewed online SCCC's inventory of available cars that included the 2008 vehicle. Medina believed the advertised price of the 2008 vehicle was $13,995. After going to the Escondido location and test driving the 2008 vehicle, Medina purchased it from SCCC for about $15,500. In connection with the purchase, Medina entered into the RISC, which, as noted, was subsequently assigned to Veros.

Medina filed his complaint against defendants on October 4, 2013. In that complaint, Medina alleged nine causes of action. With respect to his CLRA cause of action, Medina then sought only equitable and injunctive relief. Medina filed a first amended complaint (operative complaint) in late November 2013, which also included a request for damages with respect to his CLRA cause of action.

The operative complaint alleged that, shortly after Medina purchased the 2008 vehicle, the "oil" light for the 2008 vehicle illuminated; that Medina went to a gas station and added oil, then drove to SCCC to get an oil change; that when a mechanic at SCCC hoisted up the 2008 vehicle, the mechanic discovered a large hole in the oil pan had been

3

sealed with silicone; that in response, SCCC agreed to order a new part for the 2008 vehicle; and that about three or four days later when Medina returned to SCCC, he was told the dealership would not order the replacement part because it believed Medina was responsible for the repair. As a result, Medina contacted an attorney in August 2013. The operative complaint alleged it was then Medina learned for the first time that the 2008 vehicle had been in a prior accident.

The operative complaint further alleged that on September 30, 2013, Medina sent defendants a CLRA "notification and demand letter." The record shows the September 30 letter alleged defendants violated the CLRA by "(1) falsely advertising the price of the Vehicle; (2) selling the Vehicle for more than the advertised price . . .; (3) advertising the Vehicle with the intent not to sell it as advertised; (4) failing to provide customers with copies of their signed credit applications; (5) failing to provide customers with required financial disclosures regarding their credit . . .; (6) misrepresenting to customers they would receive a CarFax as part of purchase transactions; (7) failing to disclose the Vehicle had sustained prior accident damage; (8) falsely stating GAP insurance is required to obtain financing; and (9) failing to incorporate all agreements between the buyer and seller regarding payment in a single document."

The September 30 letter sought rescission of the RISC, return of all payments made up to then by Medina and payment of "incidental and consequential damages" and legal fees Medina incurred "in enforcing his legal rights." The letter also requested that SCCC "consent to the entry of a specific injunction preventing any further predatory acts

4

against the public," including preventing SCCC from "engaging in any of the nine aforementioned illegal acts," and that it allow "monitoring of its sales files to ensure future compliance." The letter informed defendants that Medina was preparing to file a lawsuit alleging a claim for equitable and injunctive relief under the CLRA as well as other claims, and that defendants had "30 days from [their] receipt of this letter to remedy [their] illegal conduct to avoid a claim for damages under the CLRA."

The operative complaint alleged causes of action against defendants including for violation of the CLRA, rescission of the RISC for violation of the Automobile Sales Finance Act (Civ. Code, § 2981 et seq., ASFA), unlawful, unfair or fraudulent business practices (Bus. & Prof. Code, § 17200 et seq., UCL) and fraudulent and negligent misrepresentation. In the prayer for relief, Medina sought general and punitive damages, rescission of the RISC, injunctive relief, prejudgment interest and reasonable attorney fees "as permitted by law (including, but not limited to [under] Civil Code §§ 1780(d), 1794, and Code of Civil Procedure § 1021.5)."

On October 16, 2013, SCCC sent Medina a written response to his September 30 letter. The October 16 letter stated that SCCC "denie[d] the claims and allegations" set forth in the September 30 letter; that SCCC "did nothing wrong and complied with all disclosures as required by law"; that without admitting any fault or liability, SCCC would be willing to "settle all alleged claims against" it, as opposed merely to Medina's damage claim under the CLRA; and that defendants' settlement offer was made pursuant to Evidence Code sections 1152 and 1154. (Italics removed.)

5

The October 16 letter thus made the following offer: "1. SCCC will rescind the [RISC]; [¶] 2. In exchange for the rescission, [Medina] shall return the subject vehicle in substantially the same condition as it was sold to [him], with minimal wear and tear"; [¶] 3. SCCC will refund any and all payments made by [Medina] on the subject vehicle to SCCC and the finance company, from the time of purchase until the present, subject to verification; [¶] 4. SCCC also will provide [Medina] with confirmation of satisfaction of [Medina's] obligations under the [RISC] for the subject vehicle, which will be paid directly to the finance company; [and ¶] 5. In a good faith effort to resolve the issues, SCCC will also waive any claim of offset for mileage placed on the subject vehicle."

The October 16 letter further stated that Medina would be required to execute a "mutual settlement and release agreement"; that SCCC would not agree to pay any of Medina's attorney fees because neither the "CLRA, nor the Songs-Beverly Act (*Cal. Civ. Code § 1790, et seq.*) provides for legal fees prior to an action being filed"; and that it would not agree to the imposition of any injunction, inasmuch as SCCC was "not known to engage in the deceptive practices [alleged by Medina]." Finally, although the October 16 letter offered a settlement, defendants nonetheless found Medina's CLRA claim "uncompelling."

The record shows Medina responded to defendants' settlement offer by letter dated October 29, 2013. The October 29 letter noted defendants had rejected both Medina's request for injunctive relief and his request for attorney fees. It further noted that there was an important distinction between a "correction under the CLRA," on the one hand, and a "settlement offer and a "settlement communication pursuant to Evidence Code

6

§§ 1152 and 1154," on the other hand; and that with respect to Medina's entitlement to attorney fees, that he had filed his lawsuit on October 4, before defendants sent the "settlement offer" on October 16.  In any event, because defendants expressed an interest in settling the entire dispute, as opposed to Medina's CLRA claim for damages, Medina made a separate settlement by letter also dated October 29.

Medina's October 29 settlement offer requested that defendants pay him about $14,400, plus reimburse him for any payments made on the 2008 vehicle after October 29 up to the date of the settlement agreement; that defendants extinguish the remainder of the RISC; that SCCC agree to a stipulated injunction on five separate grounds, as outlined therein; and that defendants pay the attorney fees and costs he incurred up to the date of the settlement agreement and entry of the proposed stipulated injunction.  The October 29 settlement offer provided that, if defendants "contest[ed] the amount" of such fees, Medina would then file a motion for attorney fees and costs with the court, with defendants agreeing Medina was "the prevailing party on all causes of action."  The record shows defendants never responded to Medina's October 29 settlement offer.

Defendant SCCC in mid-February 2014, filed an application to deposit funds with the court pursuant to Civil Code section 2983.4.  In connection with their application, SCCC contended it wanted to deposit $6,500 with the court, which amount represented $2,200 deposited by Medina when he purchased the 2008 vehicle, $3,651.95 in payments he made pursuant to the RISC, plus an additional $500 for "any possible incidental expenses, rounded up to the total of $6,500.00."  SCCC further contended that $6,500 was the "full amount" necessary to put Medina "in the position he occupied prior to

7

entering into the [RISC]" and that, as such, this amount "completely resolve[d] his claim." The court granted the application and SCCC deposited that sum with the court.

After additional unsuccessful attempts by Medina to settle the entire dispute, defendants moved for summary judgment/adjudication. In support of their motion, defendants contended they were entitled to judgment "as a matter of law" based on SCCC's October 16 settlement offer, which defendants noted "provided Plaintiff with a full and complete remedy as contemplated by the [CLRA] . . . for any damages Plaintiff claimed to have suffered as a result of claimed and unsubstantiated violations of the CLRA approximately three months earlier. As a result, Plaintiff has failed to comply with the prelitigation requirements of the CLRA and is thus precluded from recovering damages against SCCC, or any other Defendants, on Plaintiff's first cause of action. . . . Furthermore, as each subsequent cause of action is based upon the meritless allegations contained within Plaintiff's first cause of action, each and every other cause of action fails as a matter of law."

In their reply in support of their motion for summary judgment/adjudication, defendants contended they fully complied with the CLRA when they made their October 16 settlement offer to Medina, which offered rescission and a refund. As such, defendants further contended that as a matter of law they offered Medina an "appropriate remedy" under Civil Code section 1782, subdivision (b), which provides in part: "no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given with a reasonable time, to the consumer within 30 days after receipt of the notice."

8

The court denied the motion for summary judgment/adjudication. In so doing, the court ruled in part as follows: "The CLRA makes unlawful assorted 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.' [Citations.] The CLRA gives consumers who suffer damage as a result of such unlawful acts or practices the ability to seek recovery for actual damages, punitive damages, or injunctive relief. [Citations.] The CLRA also 'includes a pre-filing notice requirement on actions *seeking damages.* At least 30 days before filing a claim for damages under the CLRA, ["]the consumer must notify the prospective defendant of the alleged violations of [the CLRA"] and ["d]emand that such person correct, repair, replace or otherwise rectify the goods or services alleged to be in violation["] thereof.' " [Citations, emphasis in original.] If the prospective defendant *appropriately* corrects the alleged wrongs, or indicates that it will make *appropriate* corrections within this 30-day period, no cause of action will lie. [Citations.] In actions for injunctive relief or restitution, this notice requirement is not required. [Citations.]

"Defendants failed to meet their burden to show that Plaintiff's first cause of action [under the CLRA] cannot be established. Defendants assert that Plaintiff was offered a full, complete, and appropriate remedy pursuant to Civil Code Section 1782(b), which was rejected by Plaintiff and thus bars the first cause of action. However, as Plaintiff also seeks injunctive relief, whether the remedy was appropriate will not dispose of the first cause of action in its entirety as required. (CCP §437c(f)(1).) Further, the question of the appropriateness of Defendants' remedy is in dispute. [Citation.] In addition, there are

9

numerous other issues/disputes of fact which preclude summary judgment/adjudication such as the amount of the 'total cash price' of the vehicle [citation]; how often Defendant SCCC changed the price of the vehicles [citations]; whether Plaintiff was told that he had to purchase GAP insurance [citations]; whether Plaintiff initialed the Disclosure of Vehicle History and whether the disclosures made on that document were present [citations]; the efforts by Plaintiff to have Defendant make repairs [citations]; what Plaintiff was told regarding the vehicle during the sale [citations]; and whether it was disclosed that the vehicle was involved in a prior accident[.] [Citation.] Further, as Defendants rely on the same facts to support adjudication of the remaining causes of action, the same issues of fact preclude summary adjudication of those causes of action as well. Therefore, the motion is denied in its entirety."

The record shows trial in the underlying action was set to begin on or about July 10, 2015. In early July 2015, defendants filed motions in limine including motion in limine number 2, which sought an order precluding Medina "from presenting any evidence of damages on his [CLRA] claims." Defendants based in limine number 2 on the grounds that they provided Medina with " 'an appropriate correction, repair, replacement, or other remedy' to his claims in this action" in connection with their October 16 settlement offer, which they contended put Medina in a "better position than he was in prior to the purchase of the Vehicle."

Medina also filed motions in limine including plaintiff's number 2, which sought an order permitting Medina to seek damages under the CLRA. In connection with plaintiff's number 2, Medina argued that defendants' alleged "appropriate" remedy as set

out in defendants' October 16 settlement offer was not effective under the CLRA because it "was contingent on Plaintiff releasing all of his claims in this lawsuit, not just his CLRA claim for damages. Plaintiff's complaint includes claims for punitive damages for fraud, injunctive relief for violation of the CLRA and UCL, and attorneys' fees and costs for violation of the ASFA, CLRA, and UCL. Civil Code § 1752 prohibits such tactics. . . . [It] provides the provisions of the CLRA are not exclusive, and the remedies provided for violations of the CLRA are in addition to any other procedures or remedies provided for violation of any other law. [SCCC] contends by offering a 'correction' under the CLRA, Plaintiff was required to drop all of his other claims in this lawsuit. This is false. Plaintiff requests the Court enter an order permitting Plaintiff to seek damages under the CLRA at trial."

The record includes a July 10, 2015 minute order—the same day trial was slated to commence—providing the parties had informed the court that they had settled the case in its entirety, but nonetheless requesting hearing dates for injunctive relief and, as relevant to this appeal, an award of attorney fees.

As noted, the Settlement required Medina to dismiss his action with prejudice against defendants and others. In return, SCCC agreed to pay Medina about $8,600, comprised of the $2,200 down payment Medina paid when he purchased the 2008 vehicle, with the balance being the total monthly payments he made under the RISC.

Particularly germane to the issue on appeal, the Settlement further provided as follows:

11

"5. MOTION FOR ATTORNEYS' FEES, COSTS, AND PREJUDGMENT INTEREST:

"Medina may, at his election, file a motion with the Court in the Action seeking to recover his reasonable attorneys' fees, costs, and prejudgment interest with respect to his claims made in the Action. SCCC and Veros do not concede liability, but will not dispute the underlying *entitlement* to attorneys' fees based upon the claims brought in the Action. Medina shall be deemed the prevailing party on all causes of action for purposes of the motion. SCCC and Veros reserve the right to dispute the *reasonableness* of the attorneys' fees, costs, and prejudgment interested claimed to have been incurred. SCCC and Veros maintain all defenses as to limitations on the *amount* of attorneys' fees, costs, and prejudgment interest. The parties agree the Court retains jurisdiction pursuant to *Cal. Code Civ. Proc.* § 664.6 to hear such motion and issue such relief. The motion shall be heard by the court on October 30, 2015, or as soon thereafter as the Court is able to hear the motion." (Italics added.)

In October 2015, Medina moved for an award of attorney fees, costs and prejudgment interest. Medina based his motion on the Settlement, which, as summarized *ante*, deemed Medina to be the prevailing party on all causes of action in the operative complaint including under the CLRA and ASFA, both of which provide for an award of fees and costs to a prevailing consumer. (See e.g., Civ. Code, §§ 1780, subd. (e) (CLRA) and 2983.4 (ASFA).) Medina requested about $128,000 in attorney fees, about $7,400 in costs and about $3,700 in prejudgment interest.

12

Medina supported his request with extensive backup information including detailed billing records; a 2013-2014 United States Consumer Law Attorney Fee Survey Report; a nine-page detailed declaration by Christopher Barry, in which he reviewed the hours billed by each attorney, the myriad cases handled by his firm including under the CLRA, the ASFA and other consumer statutory schemes; and the names of just a sampling of the more than 1000 cases his firm has handled in support of consumer protections laws.

Defendants opposed the request for fees, costs and prejudgment interest. Veros contended its liability was limited to the amounts paid by Medina, or about $8,600. SCCC yet again contended that its October 16 settlement offer precluded an award of attorney fees. Specifically, SCCC argued that, "given Plaintiff's rejection of SCCC's appropriate correction [o]ffer, his 'CLRA fees and costs are not available under these circumstances' and thus cannot be deemed to have been reasonably incurred."

In reply, Medina argued defendants' opposition to the motion for attorney fees and costs violated the "express terms" of the Settlement, in that defendants agreed therein that "Plaintiff was the prevailing party for all causes of action and that they would not contest Plaintiff's entitlement to attorney's fees." Because SCCC's opposition was primarily based on its contention that Medina was not entitled to any fees because of its October 16 settlement offer, Medina argued its opposition should not be considered.

As to Veros, Medina in reply argued that its interpretation of the "holder clause" in the RISC would "eliminate the protection it is supposed to provide consumers." Medina further argued that attorney fees are not "damages," but rather are "costs," and that a "cap

13

on damages liability does not mean a successful consumer cannot recovery [his or her] attorney's fees as well.  Since Veros agreed to be liable for all claims Plaintiff had against defendant [SCCC], that agreement includes statutory attorney's fees and costs, even if those fees and costs exceed the amount [due under the RISC]."

The court in its October 30, 2015 minute order granted Medina's motion for attorney fees, costs and for prejudgment interest.  In so doing, the court ruled in part as follows:

"As set forth in the Settlement Agreement, Plaintiff is the prevailing party for the purposes of this motion.

"The trial court must first determine a 'touchstone' or 'lodestar' figure based on a careful compilation of the time spent and reasonable hourly compensation for each attorney involved in the presentation of the case.  [Citation.]  This figure may then be increased or reduced by the application of a 'multiplier' after the trial court has considered other factors concerning the lawsuit.  [Citation.]  The factors generally considered in the application of a multiplier include: (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award both from the point of view [of] eventual victory on the merits and the point of view of establishing eligibility for an award; and (4) the fact that an award against the state would ultimately fall upon the taxpayers.  [Citation.]  The court has reviewed the evidence submitted by Plaintiff's counsel and finds that the hourly rate and

14

time spent was reasonable. Thus, Plaintiff is awarded reasonable attorneys' fees in the amount of $128,004.50.

"The motion is granted as to Defendant Veros. The FTC Holder Agreement [in the RISC] does not preclude awarding attorneys' fees as to Defendant Veros.

"Plaintiff is also awarded costs in the amount of $7,367.84 and prejudgment interest in the amount of $3,738.87."

DISCUSSION

As noted, defendants contend that, although Medina was the prevailing party as provided under the Settlement, Veros was not liable to pay any portion of his fees and costs as it was merely the "holder" of the RISC and that as such, its liability was limited to the amounts Medina paid under the RISC. Defendants further contend that Medina, in any event, was not entitled to any such award because he previously had rejected SCCC's October 16 settlement offer. We turn first to defendants' latter contention because if Medina was not entitled an award of fees and costs in the first place, their former contention is moot.

A. *Guiding Principles*

" 'The purpose of the law of contracts is to protect the reasonable expectations of the parties.' " (*ASP Properties Group v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1268 (*Fard*).) " ' "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.,* § 1639.) The 'clear and explicit' meaning of these provisions, interpreted

15

in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.,* § 1644), controls judicial interpretation. (*Id.,* § 1638.)" [Citations.]' [Citation.] 'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' (Civ. Code, § 1641.) 'The factual context in which an agreement was reached is also relevant to establish its meaning unless the words themselves are susceptible to only one interpretation.' " (*Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1124 (*Canaan*).) Courts must avoid an interpretation that will make a contract extraordinary, harsh, unjust, or inequitable. (*Fard*, at p. 1269.)

B. *Analysis*

We independently conclude that defendants' contention that Medina is precluded from recovering any attorney fees, costs and prejudgment interest as a result of the October 16 settlement offer goes to the issue of *entitlement*, as opposed to *amount*, of such fees and costs. (See *Canaan*, *supra*, 211 Cal.App.4th at p. 1124.) Our conclusion is based on the "clear and explicit" language of section 5 of the Settlement. As noted *ante*, section 5 specifically provided that defendants "will not dispute [Medina's] underlying *entitlement* to attorneys' fees based upon the claims brought in the Action" (italics added); that "Medina shall be deemed the prevailing party on all causes of action for purposes of the [attorney fees] motion"; but that defendants both "reserve[d] the right to dispute the *reasonableness* of the attorneys' fees, costs, and prejudgment interested claimed to have

16

been incurred" and "maintain[ed] all defenses as to limitations on the *amount* of attorneys' fees, costs, and prejudgment interest." (Italics added.)

Our conclusion is further supported by the Settlement as a whole and the context in which it was reached by the parties. Indeed, as summarized *ante*, the record shows this *same* issue was litigated by defendants in the underlying case, including in their unsuccessful motion for summary judgment/adjudication and in their motion in limine number 2 that the court denied. In connection with their motion for summary judgment/adjudication, defendants contended that their October 16 settlement offer to Medina was an "appropriate remedy" under Civil Code section 1782, subdivision (b) and thus, that as a *matter of law* Medina was barred from obtaining any relief under the operative complaint.

It is axiomatic that the " 'determination of the legal basis for an award of attorney fees' is a 'question of law' which the reviewing court will examine de novo." (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894 (*Blickman*).) Conversely, it is a discretionary trial court decision on the amount of attorney fees and costs to be awarded. (See *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142; see also *Blickman*, at p. 894 [noting a "request for an award of attorney fees is largely entrusted to the discretion of the trial court, whose ruling 'will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence. [Citations.]' [Citation.]")

17

Here, the record shows defendants themselves recognized in connection with their summary judgment/adjudication motion that their October 16 settlement offer went to the " 'determination of the legal basis' " for (see *Blickman*, *supra*, 162 Cal.App.4th at p. 894)—or the *entitlement* to—an award of attorney fees, as it presented what they then contended was a pure question of law. The record further shows the issue of entitlement was unambiguously resolved in the Settlement when the parties agreed that Medina was the prevailing party on all causes of action and that defendants would not dispute his entitlement to an award, as opposed to the amount, of attorney fees and costs. For this additional reason, we reject defendants' contention that the Settlement left open the issue of whether the October 16 settlement offer barred Medina's right to recover attorney fees, costs and prejudgment interest.

Finally, we note it would have made little sense for the parties to enter into the Settlement and not resolve what was and, at least according to defendants only, remains, the overarching issue in the case—the legal effect, if any, of their October 16 settlement offer, in light of the parties' extensive litigation of this issue up to the time of the Settlement. (See Civ. Code, § 1636 [providing a "contract must be so interpreted as to give effect to the mutual intention of the parties as it existed *at the time of contracting*, so far as the same is ascertainable and lawful" (italics added)].) For this additional reason, we reject defendants' contention that the parties did not resolve once and for all in the Settlement the issue of the legal effect, if any, of the October 16 settlement offer.

We also reject defendants' contention that, despite section 5 of the Settlement, Medina was not entitled to an award of attorney fees and costs as a result of SCCC's

18

tender under Civil Code section 2983.4.  This statute provides:  "Reasonable attorney's fees and costs shall be awarded to the prevailing party in any action on a contract or purchase order subject to the provisions of this chapter regardless of whether the action is instituted by the seller, holder or buyer.  Where the defendant alleges in his [or her] answer that he [or she] tendered to the plaintiff the full amount to which he [or she] was entitled, and thereupon deposits in court, for the plaintiff, the amount so tendered, *and the allegation is found to be true*, then the defendant is deemed to be a prevailing party within the meaning of this section."  (Italics added.)

In light of the Settlement and section 5, which, the parties agreed, made Medina the "prevailing party," it is clear from the plain language of Civil Code section 2983.4 that SCCC did not comply with the requirements of this statute, including the requirement the "allegation [that defendant tendered the 'full amount' owed plaintiff was] found true" by a court or trier of fact.  (See *Tun v. Wells Fargo Dealer Services, Inc.* (2016) 5 Cal.App.5th 309, 326-327 [noting a tender under this statute "is an estimate of the 'full amount' of what a tendering defendant believes a plaintiff *may* be 'entitled' to in any 'action on a contract or purchase order' subject to the ASFA, which, *if* later 'found to be true by the court [or trier of fact]' [citation], will make that tendering defendant the prevailing party, despite the plaintiff's recovery of the amount tendered (or any *lesser* amount) against that defendant"].)

We also reject defendants' contention that Veros cannot be liable for the attorney fees, costs and prejudgment interest awarded Medina as a result of it being merely the "holder" of the RISC at issue in this case.  As relevant to this issue, the RISC provided in

19

all capital letters: "Notice: Any holder [i.e., Veros] of this consumer credit contract is subject to all claims and defenses which the debtor [i.e., Medina] could assert against the seller of goods or services [i.e., SCCC] obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."

The record shows Veros, like codefendant SCCC, executed the Settlement. As a result and, based on the plain language of section 5 providing defendants would not dispute Medina's "entitlement" to attorney fees and costs as a result of their concession in the Settlement he was the "prevailing party on all causes of action," we reject Veros's contention it could not be liable for such fees and costs as a result of it being the mere "holder" of the RISC.[1]

Because defendants' myriad challenges on appeal to the award of attorney fees, costs and prejudgment interest are limited to the issue of entitlement, as opposed to the their amount, we have no reason to review the reasonableness of such an award. Nonetheless, based on our own independent review of the record, it is clear the court properly exercised its discretion when it made this award. (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133, 1138 [noting a trial court has broad discretion in deciding attorney fee issues]; *Cates v. Chiang* (2013) 213 Cal.App.4th 791, 820–821 [noting an attorney

_____

[1] In any event, it would appear from the plain language of Civil Code section 2983.4, which provides for an award of reasonable attorney fees and costs to a prevailing party "regardless of whether the action is instituted by the seller, holder or buyer," that an award of such fees and costs against a holder (i.e., Veros) is not limited to the amounts paid by the debtor (i.e., Medina) under a retail installment sales contract.

20

fee award will not be reversed unless a reviewing court is "convinced" the ruling is "clearly wrong" and further noting the general rule that "[t]rial judges are . . . in the best position to assess the value of the professional services provided in their courts"].)

Finally, as to defendants' contention this case presents a matter of "first impression" regarding the "holder rule," its "continued misapplication . . . and the resulting detrimental impact on the financial services industry and the consumers," even without the Settlement—including section 5 therein—we conclude this contention necessarily raises policy concerns that are more properly directed at, and considered by, the Legislature.

## DISPOSITION

The order granting Medina attorney fees, costs and prejudgment interest is affirmed. Medina is entitled to his costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

AARON, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GERARDO MEDINA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SOUTH COAST CAR COMPANY, INC. et al.,<br><br>    Defendants and Appellants. | D069820<br><br><br><br>(Super. Ct. No. 37-2013-00069866-CU-FR-CTL)<br><br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed September 19, 2017, was not certified for publication. It appearing the opinion meets the standards of publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____
                                                                BENKE, Acting P. J.

Copies to:  All parties